IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 09-00112-01-CR-W-ODS |
| CLIFTON D. TAYLOR, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER AND OPINION DENYING DEFENDANT'S MOTION FOR A NEW TRIAL

Pending is Defendant's motion for a new trial (Doc. 114). The motion is denied.

I. BACKGROUND

The United States charged Defendant with bank robbery and Assistant Federal Public Defender Travis Poindexter was appointed to represent him. Defendant subsequently filed eight pro se motions complaining that Mr. Poindexter's performance was deficient and requesting new counsel, each of which was denied by Magistrate Judge Robert E. Larsen for the reason that Defendant failed to show justifiable dissatisfaction with Mr. Poindexter's performance. At a hearing held November 9, 2009, Judge Larsen denied Defendant's request for substitute counsel, and Defendant reacted by standing and overturning the defense table, injuring a defense investigator in the process.[1]

Defendant subsequently filed a motion to proceed pro se. At the hearing on Defendant's motion, Judge Larsen explained the difficulties of pretrial preparation and

---

[1] As a precaution against further outbursts, Defendant's legs were shackled at trial. To ensure that the jury did not see the shackles, the Court skirted the parties' tables and the parties were prohibited from standing during opening statement, examinations, and closing argument.

the trial itself, including voir dire, opening and closing arguments, and cross-examination. Judge Larsen advised Defendant that these activities would be very difficult without legal training, emphasized that self-representation by a criminal defendant "is normally not a very smart decision," and warned Defendant that his choice of self-representation increased his likelihood of a conviction. Nevertheless, Defendant insisted on representing himself, and his motion to do so was granted, with Mr. Poindexter designated as stand-by counsel.

Defendant's jury trial was held January 19 & 20, 2010. Prior to voir dire, the undersigned warned Defendant again that proceeding pro se was ill-advised and that self-representation posed hazards that could undermine Defendant's defense. Defendant remained steadfast in his decision to represent himself, and the trial proceeded, with Defendant participating in jury selection, making opening and closing arguments, cross-examining witnesses, and testifying on his behalf.

In defending himself, Defendant attempted to portray Mr. Poindexter as collaborating with the United States. Defendant introduced a report commissioned by Mr. Poindexter confirming the presence of Defendant's DNA on the money, coat, and hat implicated in the robbery. Referencing this report, Defendant contended that Mr. Poindexter failed to independently obtain a buccal swab from him to submit to the lab, thereby supporting Defendant's theory of disloyalty.[2] Defendant further attempted to bolster his defense during closing argument by asserting that he had been previously convicted of a drug charge of which he was innocent.

The jury convicted Defendant of bank robbery and he filed the instant motion for a new trial, claiming the Court erred by "failing to **sua sponte** intervene and stop the proceedings and declare a mistrial at the point where [Defendant's] presentation of DNA evidence against himself and the revelation of his own prior criminal record significantly bolstered the government's case against him." In addition, Defendant claims the Court erred in "fail[ing] to provide him with a stand-by counsel with whom he could effectively

---

[2] Mr. Poindexter testified that he requested a buccal swab from Defendant, but Defendant refused to provide one; as a result, Defendant's DNA analyst used the same swabs as the United States' experts, with the same result.

communicate." The United States counters that a new trial is not warranted because Defendant was not entitled to replace Mr. Poindexter with substitute counsel and Defendant's choice to represent himself was knowing, voluntary, and intelligent.

## II. DISCUSSION

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. Pro. 33(a). Defendant asserts that the Court's failure to replace Mr. Poindexter with substitute stand-by counsel resulted in a "structural defect" denying him a fair trial. Defendant also claims that the Court's failure to intervene sua sponte and "protect Defendant from himself" warrants a new trial. Neither of these arguments have merit.

### 1. *Structural Defect*

Defendant's structural defect argument relies upon *U.S. v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006), which holds that the erroneous deprivation of a criminal defendant's choice of counsel qualifies as a structural defect not subject to harmless error analysis. In contrast to *Gonzalez-Lopez*, however, Defendant chose to represent himself, and he had no constitutional right to standby counsel. *See U.S. v. Keiser*, 578 F.3d 897, 903 (8th Cir. 2009) (citation omitted) ("'[A]ppointment of standby counsel is within the discretion of the district court, and a pro se defendant does not enjoy an absolute right to standby counsel.'"); *United States v. Einfeldt*, 138 F.3d 373, 378 (8th Cir.), *cert. denied*, 525 U.S. 851 (1998); *U.S. v. Swinney*, 970 F.2d 494, 498 (8th Cir. 1992) (citations omitted) ("[T]he district court may properly require the defendant to choose either to proceed pro se, with or without the help of standby counsel, or to utilize the full assistance of counsel, who would present the defendant's defense."). Absent the denial of a constitutional right, Defendant's structural defect argument fails.

Underlying Defendant's structural defect claim is his contention that the Court should have replaced Mr. Poindexter with substitute stand-by counsel. "Where a district

court has elected to appoint standby counsel, the defendant will be able to compel the attorney's dismissal only by meeting the criteria applicable to the discharge of a lawyer fully representing the accused." *U.S. v. Webster*, 84 F.3d 1056, 1063 (8th Cir. 1996).

> When faced with a motion to appoint substitute counsel, the district court must balance several factors, including "the need to ensure effective legal representation, the need to thwart abusive delay tactics, and the reality that a person accused of crime is often genuinely unhappy with an appointed counsel who is nonetheless doing a good job."

*U.S. v. Barrow*, 287 F.3d 733, 738 (8th Cir. 2002) (citation omitted).  A defendant must show "justifiable dissatisfaction" with appointed counsel in order to be granted a substitute.  *U.S. v. Exson*, 328 F.3d 456, 460 (8th Cir. 2003).  Defendant claims that substitute counsel should have been appointed because he lacked confidence in and did not have a "working relationship" with Mr. Poindexter.  However, the proper focus in this context is the quality of existing counsel's advocacy, not whether there exists a meaningful relationship between counsel and the defendant.  *Id.*  Defendant's pretrial motions reveal that he was frustrated because Mr. Poindexter did not comply with Defendant's tactical suggestions, but, as Judge Larsen held, this does not constitute justifiable dissatisfaction.  *See Barrow*, 287 F.3d at 738.  Defendant has not demonstrated any deficiency in Mr. Poindexter's representation.  Defendant has not established that he was entitled to substitute standby counsel.

Defendant's motion also implies that the only reason he chose to represent himself is because the Court would not replace Mr. Poindexter with another attorney. Inasmuch as Defendant is suggesting that his decision to proceed pro se was not knowing, voluntary, and intelligent, this claim is refuted by the record.  Both Judge Larsen and the undersigned warned Defendant that self-representation posed many dangers which increased the likelihood that he would be convicted.  Defendant exhibited an understanding of the nature of the charges against him and chose to represent himself, actively participating during all aspects of the trial.  Under these circumstances, Defendant's election to proceed pro se was valid and provides no basis for relief.  *See U.S. v. Abdul-Aziz*, 486 F.3d 471, 474-75 (8th Cir. 2007); *U.S. v. Kind*, 194 F.3d 900,

904-05 (8th Cir. 1999).

Defendant also claims that he did not receive a fair trial because his performance in representing himself was deficient. However, a defendant who exercises his or her right to proceed pro se cannot thereafter complain that the quality of his or her own defense amounted to ineffective assistance of counsel. *U.S. v. Brockman*, 183 F.3d 891, 898 n.7 (8th Cir. 1999). Defendant's contention is without merit.

### *2. Sua Sponte Intervention*

In support of his claim that the Court should have intervened at trial and "protect[ed] Defendant from himself," Defendant cites *U.S. v. Wilson*, 149 F.3d 1298, 1304 (11th Cir. 1998), which holds that a district court has a duty to sua sponte intervene and stop a prosecutor from making excessively prejudicial arguments or statements. However, this proposition of law is inapplicable to Defendant's case. The Court is aware of no law requiring it to stop a pro se defendant from offering evidence or making statements detrimental to his or her defense. Defendant's argument has no basis in law and is rejected.

### III. CONCLUSION

Defendant has not shown that the interest of justice requires a new trial to be granted. Defendant's motion for a new trial is denied.
 IT IS SO ORDERED.

                                                    /s/ <u>Ortrie D. Smith</u>
                                                   ORTRIE D. SMITH, JUDGE
DATE: February 19, 2010                 UNITED STATES DISTRICT COURT